BUCHALTER NEMER
A Professional Corporation
Jeffrey S. Wruble (SBN: 94734)
1000 Wilshire Boulevard,
Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

DIAMOND McCARTHY LLP
Jacob Roberts (Texas SBN: 24065982)
Two Houston Center
909 Fannin, 15TH Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199
Email: jroberts@diamondmccarthy.com

Attorneys for Plaintiff
USACM Liquidating Trust

# UNITED STATES DISTRICT COURT
# DISTRICT OF CALIFORNIA

| | |
|---|---|
| USACM LIQUIDATING TRUST,<br><br>      Plaintiff,<br><br>vs.<br><br>ANTHONY MONACO, SUSAN MONACO, AND MONACO DIVERSIFIED CORPORATION,<br><br>      Defendants. | CASE NO. ED CV 11-829 ABC (OPx)<br>[Assigned to the Hon. Audrey B. Collins]<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND ISSUANCE OF A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declarations of Geoffrey L. Berman, Jacob J. Roberts and Theodore Lanes Submitted Concurrently Herewith]<br><br>Date:     May 21, 2012<br>Time:    10:00 a.m.<br>Courtroom: 680 |

BN 10775823V9

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 21, 2012, at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 680 of the above-entitled Court, located at 255 E. Temple St., Los Angeles, California 90012, before the Honorable Audrey B. Collins, Plaintiff USACM Liquidating Trust ("Trust"), by and through its attorneys of record, Buchalter Nemer, a Professional Corporation, and Diamond, McCarthy LLP, will and hereby does move the Court for:

1) **The Appointment of a Receiver** to take possession and control of all assets directly or indirectly owned or controlled by Anthony or Susan Monaco (the "Monaco Assets") to satisfy a $5.5 million agreed judgment executed by the Monacos in favor of the Trust (the "Agreed Judgment"). The Agreed Judgment was entered by the United States District Court for the District of Nevada on June 24, 2010, and was registered by this court on September 16, 2010, and;

2) **A Preliminary Injunction** in aid of the receivership, ordering Anthony and Susan Monaco, and their agents, attorneys and representatives, not to:

   a. Expend, disburse, remove, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any portion of the Monaco Assets;

   b. Interfere in any way, directly or indirectly, with the Receiver's performance of his/her duties and responsibilities and the exercise of his/her powers and/or doing any act which may impair, defeat, divert, prevent or prejudice the preservation of the Monaco Assets or the proceeds thereof;

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 10775823V9

1

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

c. Commit or permit any waste of the Monaco Assets or any portion thereof, or suffer or commit or permit any act on the Monaco Assets or any part thereof in violation of law;

d. Conceal or withhold any Monaco Assets, including any real property, indirect or beneficial ownership interests, or funds from the Receiver;

e. Do any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Monaco Assets;

f. Demand, collect, receive or spend any portion or proceeds of the Monaco Assets; and

g. Fail to pay over to the Receiver any monies whenever received, presently in the possession, custody or control of the Monacos, their agents, representatives, servants, assigns and all those acting in concert therewith and that have been received as proceeds since the date hereof, including without limitation, rent, issues, proceeds, insurance payments, or profits from the Monaco Assets.

This Application is brought under California <u>Civil Code</u> sections 564(b)(3) and 708.610 *et seq.*, on the grounds that the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the Agreed Judgment. A receiver is both reasonable and necessary to satisfy the Agreed Judgment based on the following facts:

- The Monacos have failed to pay a penny of the ***millions*** of dollars currently owed on the Agreed Judgment (although approximately $106,982.49 was involuntarily seized by the Trust from the Monacos' bank accounts).

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 10775823V9

2

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

- Despite repeated representations to the Trust that they had no assets, Anthony Monaco testified during his judgment debtor's examination on April 13, 2011 that between August 2010 and March 2011 he and his wife Susan had received approximately $1.4 million in cash for the settlement of a promissory note in their favor and the sale of real property (which the Monacos had concealed by holding it in the name of "Eden Kai") in the Cayman Islands. None of those funds were remitted to the Trust. In fact, Anthony Monaco testified that he had spent his entire half of the approximately $684,000 net receipts "burn[ing]" most of it "going out and having a good time, eating dinner, drinking, gambling, buying stuff that means nothing"[1] or had transferred it to his lawyers—Lobb & Cliff LLP—ostensibly as a retainer.

- Anthony Monaco also testified during his judgment debtor's examination that he funneled his half of the $684,000 net sales price through Lobb & Cliff's bank account. Anthony Monaco's bank records show that Lobb & Cliff then transferred funds to Anthony Monaco in $25,000 increments.

- The Monacos fraudulently transferred substantially all of their assets to shell companies and trusts. These transfers are the subject of a proceeding in California Superior Court, Riverside County, Case No. RIC1110904.

- The Monacos continue to dissipate, conceal and fraudulently transfer the Monaco assets.

- The Monacos are likely insolvent.

---

[1] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 31:4 - 31:11 and 138:22 - 139:20.

BN 10775823V9

3

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

It is for these reasons, and others asserted herein, that the Trust seeks the immediate appointment of Theodore Lanes as receiver to take possession, custody and control of the Monaco Assets. Without the immediate appointment of a receiver, the Trust faces irreparable harm from the Monacos continued concealment and dissipation of the Monaco Assets.

In addition, a Preliminary Injunction is necessary to enjoin the Monacos and their agents from interfering in any way with the duties of the Receiver or taking any adverse actions with respect to the Monaco Assets.

This Application is supported by the accompanying Memorandum of Points and Authorities and Declarations of Geoffrey L. Berman, Jacob J. Roberts and Theodore Lanes, as well as the complete files and pleadings of this action on file herein.

DATED: April 2, 2012

BUCHALTER NEMER
A Professional Corporation

By: /s/ Jeffrey S. Wruble
JEFFREY S. WRUBLE
Counsel for USACM Liquidating Trust

BN 10775823V9                                    4

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS

**PAGE**

I. STATEMENT OF FACTS ..................................................................................1

    A. The Trust's $5.5 Million Agreed Judgment Against the Monacos ......1

    B. The Monacos' Post-Judgment Asset Concealment..............................1

    C. The Monacos' Fraudulently Transfer Their Assets .............................4

II. LEGAL ARGUMENT .......................................................................................5

    A. Appointment Of A Receiver Is Proper In This Action ........................5

    B. This Court Has Jurisdiction to Appoint a Receiver in this Matter........9

    C. Defendant Is Protected By the Filing of an Undertaking in the Amount of $25,000. ...........................................................................10

III. CONCLUSION ................................................................................................11

BN 10775823V9

i

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Canada Life Assurance Co. v. LaPeter*,
   563 F.3d 837 (9th Cir. 2009) ............................................................................. 7

*In re Hawkins*,
   Bankr. No. 06-03258, Adv. No. 07-80017, 2007 WL 1428619
   (Bankr. E.D. Wash. May 11, 2007) .................................................................. 10

*In re Oxford Homes, Inc.*,
   180 B.R. 1 (Bankr. D. Me. 1995) ...................................................................... 10

*In re USA Commercial Mortgage Company, et al.*,
   U.S.B.C. Case No. 06-10725,
   United States Bankruptcy Court District of Nevada ........................................ 1

*Joe Hand Promotions, Inc. v. Saddeldin*,
   2011 WL 1806919 (E.D. Cal. May 10, 2011) .................................................... 5

*Office Depot, Inc. v. Zuccarini*,
   596 F.3d 696 (9th Cir. 2010) .............................................................................. 5

**Statutes**

28 U.S.C.A. § 1963 ................................................................................................... 9
Civil Code § 564(b)(3) .............................................................................................. 6
Code of Civil Procedure §§ 564 *et seq.* .................................................................... 6
Code of Civil Procedure § 567 ................................................................................ 10
Code of Civil Procedure § 708.610 .......................................................................... 6
Code of Civil Procedure § 708.620 .......................................................................... 6

**Rules**

Fed.R.Bankr.P. 7065(c) ........................................................................................... 10
Fed.R.Civ.P. 66 ......................................................................................................... 5
Fed.R.Civ.P. 69(a) .................................................................................................... 5
Fed.R.Civ.P. 69(a)(1) ............................................................................................... 5

BN 10775823V9

ii

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY
INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITES

## I.

## STATEMENT OF FACTS

**A.     The Trust's $5.5 Million Agreed Judgment Against the Monacos**

From 2000 to 2007 Anthony Monaco ("Anthony Monaco") and Susan K. Monaco ("Sue Monaco," and together with Anthony Monaco, the "Monacos") received over $23 million in unjust profit distributions from entities capitalized with funds from USA Commercial Mortgage Company ("USACM").[1] As a result of massive fraud perpetrated upon USACM by Thomas Hantges ("Hantges") and Joseph Milanowski ("Milanowski")—and from which the Monacos benefited—on April 13, 2006, USACM filed for bankruptcy.[2] The USACM Liquidating Trust ("Trust") was formed in an effort to recover assets from the perpetrators and participants in the fraud in order to compensate the investors and other creditors of USACM and its related entities.[3] Based on the Monacos' unjust enrichment, the Trust filed suit against them in April 2008 ("Original Action").[4] The Original Action was resolved with the entry of a $5.5 million settlement and agreed judgment ("Agreed Judgment") against the Monacos in favor of the Trust on June 25, 2010.[5] To date the Agreed Judgment remains outstanding.[6] The Agreed Judgment lacked a cash component due to the Monacos' consistent representations to the Trust that they had no liquid assets.

**B.     The Monacos' Post-Judgment Asset Concealment**

In stark contrast to their repeated claims of poverty during litigation, in the eight months following the entry of the Agreed Judgment the Monacos obtained

---

[1] Declaration of Geoffrey L. Berman in Support of Motion for the Appointment of a Receiver ("Berman Decl.") ¶ 5.
[2] *In re USA Commercial Mortgage Company, et al.*, U.S.B.C. Case No. 06-10725, United States Bankruptcy Court District of Nevada; Berman Decl. ¶ 5.
[3] Berman Decl. ¶ 6.
[4] Berman Decl. ¶ 6.
[5] Berman Decl. ¶ 6.
[6] Berman Decl. ¶ 9.

BN 10775823V9

1

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

another $1.368 million in cash.[7] None of these funds were remitted to the Trust.[8] The Monacos received $700,000 in August 2010, as settlement of a $1 million promissory note from the Brenden Noble Trust (the "Brenden Noble Note")[9] and another $700,000 by causing an entity controlled by the Monacos, Eden Kai Ltd., a Cayman corporation ("Eden Kai"), to sell its Cayman Island Property for $700,000 (ultimately receiving $668,000 after closing costs) on January 6, 2011.[10] As the Monacos are currently divorcing, Anthony and Sue Monaco each received half of the proceeds from both transactions.[11]

Anthony Monaco's $350,000 share of the proceeds from the settlement of the Brenden Noble Note was wired from the Brenden Noble Trust to a bank account maintained by Lobb & Cliff.[12] Lobb & Cliff later wired $235,500 of these funds to Alaska Horse's bank account at JPMorgan Chase Bank, N.A. on August 23, 2010, for use by Anthony Monaco.[13] Anthony Monaco's $334,000 share of the proceeds from the sale of the Monacos' Cayman Island property was also wired to a bank account maintained by Lobb & Cliff,[14] which later wired a portion of these funds to (1) Alaska Horse's bank account at JPMorgan Chase Bank, N.A. for use by Anthony Monaco (approximately $40,000), (2) an account at BBVA in Anthony Monaco's name opened on February 14, 2011 (approximately $75,000), and (3) an account at California Bank & Trust in his name opened on February 14, 2011 ($75,000 in three $25,000 transfers on February 15, 2011, February 25, 2011, and March 3, 2011, respectively).[15]

---

[7] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 28:20 - 31:4; 60:22 - 62:6.
[8] Berman Decl., ¶ 9.
[9] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 60:22 - 62:6.
[10] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 28:20 - 31:4.
[11] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 12:2 - 12:9; 61:13 - 61:16.
[12] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 71:3 - 73:11.
[13] Roberts Decl., Ex. 14 (Alaska Horse Chase Bank Statement) at page 4; Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 30:4 - 30:13.
[14] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 30:4 - 31:4.
[15] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 34:13 - 37:17; Ex. 15 (California Bank & Trust Account Statements).

BN 10775823V9

2

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

On September 30, 2010, the Trust propounded post-judgment document requests and subpoenas on the Monacos and Lobb & Cliff. Among other things, the requests sought production of information regarding any trusts the Monacos had created since January 1, 2000.[16] Neither the Monacos nor Lobb & Cliff produced any responsive documents or a privilege log.[17] Both Anthony and Sue Monaco objected to the Trust's requests as being unduly burdensome and violative the privacy interests and rights of third parties in addition to being subject to a claim of privilege.[18]

In February and March, 2011 the Trust seized by bank levy approximately $106,982.49 located in three of Anthony Monaco's bank accounts.[19] These were the first and only funds the Trust recovered from the Monacos in satisfaction of the Agreed Judgment. As of April 13, 2011, Anthony Monaco had wasted all of the approximately $577,017.51 referenced above ($334,000 [Eden Kai proceeds] plus $350,000 [Brenden Noble Trust Note proceeds] = $684,000 minus $106,982.49 [seized by the Trust]), "burn[ing]," most of it "going out and having a goodtime, eating dinner, drinking, gambling, buying stuff that means nothing."[20] Monaco also

---

[16] Roberts Decl., ¶ 28.
[17] Roberts Decl., ¶ 28.
[18] Roberts Decl., ¶ 28. As the Court requested clarification from the United States District Court for Nevada that this Court could properly rule upon matters relating to the enforcement of the Agreed Judgment, the Trust could not take further action relating to the discovery or the Judgment until the United States District Court for Nevada ruled on the Trust's application for clarification of the Agreed Judgment. On December 7, 2011, that Court entered its order clarifying that this Court does indeed have the power and authority to rule upon matters relating to the enforcement of the Agreed Judgment. On January 31, 2012, this Court entered its order lifting the stay it had imposed staying all action in this matter.
[19] Roberts Decl., ¶ 25; Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam at 31:6-7)
[20] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 31:4 - 31:11 and 138:22 - 139:20.

BN 10775823V9

3

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

transferred an unspecified amount to Lobb & Cliff LLP, his counsel, as a "retainer."[21]

### C. The Monacos' Fraudulently Transfer Their Assets

In addition to concealing and dissipating assets post-judgment, the Monacos fraudulently transferred substantially all of their assets to shell companies and trusts after learning of their expected liability to the Trust.

By April 13, 2006, USACM had filed for bankruptcy protection and the USACM empire run by Hantges and Milanowski had collapsed. In response to these events, the Monacos retained Lobb & Cliff LLP to assist them in transferring their assets out of the reach of their USACM-related creditors.[22] During spring and summer 2007, Lobb & Cliff assisted the Monacos in fraudulently transferring five properties to Alaska Horse LLC,[23] an entity wholly-owned by the Monacos and created by Lobb & Cliff partner J. Mark Lobb in April 2007.[24] The five properties had been purchased by the Monacos for $6.1 million in cash and were transferred to Alaska Horse for no consideration.[25] Lobb & Cliff then assisted the Monacos in transferring another $7.3 million to trusts the law firm created for them.[26] Additionally, in August 2007, the Monacos used $1.3 million of their personal funds to purchase a parcel of real property in the Cayman Islands, the deed for which was placed in the name of Eden Kai.[27] These $14.7 million of transferred assets represented substantially all of the Monacos' assets at the time.[28] All had

---

[21] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 31:4 - 31:11; 63:21 and 63:23.
[22] Roberts Decl. ¶¶ 8 – 18; Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 164:19 -165:6 and 154:17-156:18; Roberts Decl., Exs. 2 - 5 (Alaska Horse formation documents).
[23] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 39:20 - 48:21; 50:8 - 56:15, 56:16 - 58:15, and 68:10 - 69:20; Roberts Decl., Exs. 6 - 11 (Deeds transferring properties to Alaska Horse).
[24] Roberts Decl., Ex. 2 - 5 (Alaska Horse formation documents).
[25] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 45:20 - 48:21; 50:8 - 50:24; 54:21 - 55:15; 56:16 - 57:21; 59:14 - 60:4; 68:10 - 70:10.
[26] Roberts Decl., Ex. 13 (Monaco Balance Sheet dated October 31, 2007).
[27] Roberts Decl. ¶¶ 19 & 20; Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 24:21 - 27:10; Roberts Decl., Ex. 12 (Eden Kai Transfer of Land).
[28] Roberts Decl., Ex. 13 (Monaco Balance Sheet dated October 31, 2007).

BN 10775823V9
4
NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Buchalter Nemer
A Professional Corporation
Los Angeles

been obtained by the Monacos solely through Hantges' and Milanowski's looting of USACM.[29]

These transfers are currently the subject of a proceeding in California Superior Court, Riverside County, Case No. RIC1110904.

## II.

## LEGAL ARGUMENT

### A. Appointment Of A Receiver Is Proper In This Action

The Ninth Circuit has held that federal law, to the extent it is on point, governs the appointment of receivers in federal court. Rule 69(a) of the Federal Rules of Civil Procedure governs the execution of final judgments and states that a "money judgment is enforced by a writ of execution ... [and] [t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."[30]

Rule 66 of the Federal Rules of Civil Procedure governs the appointment of receivers. The Ninth Circuit has held that because "[t]he federal rules, including Rule 66, qualify as federal statutes under Rule 69(a) [,] ... Rule 66 prevails over any state law to the extent it applies."[31] However, when the federal statute is a general procedural rule, specific state statutes addressing the particular procedure at issue apply.[32] Therefore, "state law has been applied under Rule 69(a) to appointment of receivers, when such actions are undertaken in aid of executing a judgment."[33] Because the Federal Rules do not specifically address the issue of the appointment of a receiver in aid of executing a judgment, the Court should look to California

---

[29] Berman Decl. ¶5.
[30] Federal Rules of Civil Procedure 69(a)(1).
[31] *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 701 (9th Cir.2010) (internal citations omitted).
[32] See *id*. at 701-703.
[33] *Joe Hand Promotions, Inc. v. Saddeldin*, 2011 WL 1806919, at *1 (E.D. Cal. May 10, 2011) (citing *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir.2010)).

BN 10775823V9                         5

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

law—which does specifically address the issue—to determine whether the Trust is entitled to have such a receiver appointed.

Section 564(b)(3) of the California <u>Civil Code</u> provides for the appointment of a receiver to aid in the enforcement of a judgment:

> (b) A receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases:
>
> (3) After judgment, to carry the judgment into effect.

Similarly, Section 708.620 of the California <u>Civil Code</u> provides:

> The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment.

In so appointing a receiver to enforce a judgment, the provisions of the California <u>Code of Civil procedure</u> sections 564 *et seq.* govern the appointment, qualifications, powers, rights and duties of the receiver.[34] To the extent the Monacos have assets subject to levy that can either be turned over to the Trust or liquidated to satisfy the Agreed Judgment, the appointment of a receiver represents an efficient mechanism and is likely to result in value in excess of what could be recovered if the Agreed Judgment was enforced without the use of a receiver – particularly because the Monacos have demonstrated a propensity for concealing their assets in the names of trusts or entities with no obvious connection to the Monacos – both here and abroad.

Here, the appointment of a receiver represents a reasonable method to obtain a fair and orderly satisfaction of the judgments[35] -- especially given the fact that the Monacos fraudulently transferred substantially all of their assets pre-judgment and

---

[34] California Code of Civil Procedure § 708.610.
[35] California Code of Civil Procedure § 708.620.

BN 10775823V9

6

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

have been actively concealing and dissipating their assets post-judgment, apparently liquidating and spending the proceeds of assets purportedly held by Alaska Trust or other Monaco controlled entities. Thus, the statutory requirements for appointment of a receiver are met. Without the appointment of a receiver the Trust will always be at least one step behind the Monacos – by the time the Trust can take a judgment debtor examination or subpoena documents the Monacos will have had time to transfer their assets.

Moreover, even if this Court determines that federal law governs the appointment of a receiver to aid in the enforcement of the Agreed Judgment, both federal and California law regarding the appointment of a receiver are substantially similar and the facts of this case warrant appointment under either standard. The federal standard is articulated in *Canada Life Assurance Co. v. LaPeter*[36] where the Ninth Circuit held that "the district court has broad discretion in appointing a receiver, [and] it may consider a host of relevant factors, and [] no one factor is dispositive." Those factors can include:

(1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.[37]

---

[36] 563 F.3d 837 (9th Cir. 2009).
[37] *Canada Life Assurance Co. v. LaPeter,* 563 F.3d 837, 844 (9th Cir. 2009) (internal citations omitted).
BN 10775823V9

7

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

As set out in detail in the accompanying Declarations of Geoffrey L. Berman and Jacob J. Roberts, a receiver is both reasonable and necessary to satisfy the Agreed Judgment based on the following facts:

- The Monacos have failed to pay a penny of the *millions* of dollars currently owed on the Agreed Judgment (although approximately $106,982.49 was involuntarily seized by the Trust from the Monacos' bank accounts).

- Despite repeated representations to the Trust that they had no assets, Anthony Monaco testified during his judgment debtor's examination that between August 2010 and March 2011 he and his wife Susan had received approximately $1.4 million in cash for the settlement of a promissory note in their favor and the sale of the "Eden Kai" property in the Cayman Islands. None of those funds were remitted the Trust.[38] In fact, Anthony Monaco testified that he had spent his entire half of the approximately $684,000 net receipts "burn[ing]" most of it "going out and having a goodtime, eating dinner, drinking, gambling, buying stuff that means nothing"[39] or had transferred it to his lawyers—Lobb & Cliff LLP—ostensibly as a retainer.[40]

- Anthony Monaco also testified during his judgment debtor's examination that he funneled his half of the $684,000 net sales price share through Lobb & Cliff's bank account. Anthony Monaco's bank records show that Lobb & Cliff then transferred funds to Anthony Monaco in $25,000 increments.[41]

---

[38] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 28:20 - 31:4; 60:22 - 62:6.
[39] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 31:4 - 31:11 and 138:22 - 139:20.
[40] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 31:4 - 31:11; 63:21 and 63:23.
[41] Roberts Decl., Ex. 1 (A. Monaco Judgment Debtor's Exam) at 30:4 - 31:4, 34:13 - 37:17; Ex. 14 (Alaska Horse Chase Bank Statement) at page 4; Ex. 15 (California Bank & Trust Account Statements).

BN 10775823V9
8
NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

- The Monacos fraudulently transferred substantially all of their assets to shell companies and trusts. These transfers are the subject of a proceeding in California Superior Court, Riverside County, Case No. RIC1110904.
- The Monacos continue to dissipate, conceal, and fraudulently transfer their assets.
- The Monacos are likely insolvent.

B. **This Court Has Jurisdiction to Appoint a Receiver in this Matter**

On September 16, 2010, the Trust registered the Agreed Judgment in this Court in accordance with 28 U.S.C.A. § 1963. This provision serves to simplify and facilitate collection on valid judgments. Specifically, 28 U.S.C.A. § 1963 provides that:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

As the Monacos and a significant portion of their assets are located within this district, and because the District of Nevada has no jurisdiction over either property or third parties located outside of Nevada, this Court is the appropriate court for enforcing the Agreed Judgment for assets and parties located in California. As noted at footnote 18, above, on December 7, 2011, the United States District Court for Nevada entered its order clarifying that this Court does indeed have the

BN 10775823V9

9

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1 power and authority to rule upon matters relating to the enforcement of the Agreed
2 Judgment.
3    Thus, the Trust's registration of the Agreed Judgment in this Court was and
4 is both necessary and proper and the miscellaneous matter opened by that
5 registration should remain open. Further, such proceeding confers upon this Court
6 the power to appoint a receiver to facilitate the Trust's collection on the Agreed
7 Judgment.

### C. Defendant Is Protected By the Filing of an Undertaking in the Amount of $25,000.

The Court should not require the Trust to post a bond for the preliminary injunction because Federal Rule of Bankruptcy Procedure 7065(c) waives such requirement for a bankruptcy trustee.[42] Code of Civil Procedure § 567 provides for the filing of an undertaking by the Receiver in an amount to be fixed by the Court. Plaintiff suggests that an undertaking in the amount of $25,000 is reasonable under the circumstances of this case. Given the amount that is due and owing to Plaintiff related to the claimed amount of the Monaco Assets the Monacos clearly do not have any interest which needs to be protected.

---

[42] *In re Hawkins*, Bankr. No. 06-03258, Adv. No. 07-80017, 2007 WL 1428619 at *2 (Bankr. E.D. Wash. May 11, 2007) (noting that the bond requirement is waived); *see also In re Oxford Homes, Inc.*, 180 B.R. 1, 14 & n.20 (Bankr. D. Me. 1995) (holding that a post-confirmation trustee qualified as a "trustee" that is exempt from posting a bond under Rule 7065(c)).

BN 10775823V9

10

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

## III.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that Theodore Lanes be appointed as Receiver and that a preliminary injunction in aid of the receivership issue concurrently with the appointment of a receiver as prayed for in the Notice of Motion. Plaintiff also requests such other and further relief as the Court deems just and proper.

DATED: April 2, 2012

Respectfully submitted,

BUCHALTER NEMER
A Professional Corporation

By: _____
JEFFREY S. WRUBLE
Attorneys for Plaintiff,
USACM Liquidating Trust

BN 10775823V9

11

NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING RECEIVER AND A PRELIMINARY INJUNCTION IN AID THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES